JAN 1 9 2021

In The United States District Court
For The
Southern District of New York

Dexter Thomas,
Movant

Case No.: 11-CR-00630
Judge Kenneth M. Karas

v.

United States of America

# MEMO ENDORSED

MOVANT'S MOTION FOR MODIFICATION OF SENTENCE
PURSUANT TO TITLE 18 U.S.C. §3582(c)(1)(A)

To The Honorable Judge Kenneth M. Karas:

Comes now Dexter Thomas, the Movant, pro se, and respectfully files this Memorandum Brief in support of his Motion for Modification of Sentence pursuant to 18 U.S.C. §3582(c)(1)(A).

The Movant is a man that is not schooled in the law, and is left to his own inadequate device to endeavor, to put his Motion in order without the assistance or guidance from counsel. Thus, Movant argues that pursuant to the provision outline in <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); if the Writ of Habeas Corpus is to continue to have meaningful purpose, it must be accessible not only to those with a strong legal background or the financial means to retain counsel, but also to the mass of uneducated, unrepresented prisoner. <u>Williams v. Kullman</u>, 772 F.2d. 1048, 1050 (2nd Cir. 1998); as well as current law and procedure, it is

Movant's prayerful hope that this Honorable Court will overlook any minor (inferred or otherwise) discrepancies. Movant is a layman and thus not well-versed in all of the intricacies of the legal procedures and practices. This Court should liberally construe this Motion with a tolerant eye towards Movant's pro se status, as well as the good faith intent on Movant Thomas' part to comply with any and all rules. Furthermore, because Movant Thomas is proceeding pro se, this submission must be read to "raise the strongest argument they suggest," Olie v. Columbia Univ., 332 F. Supp. 2d. 599, 607 (SDNY 2004), Aff'd. 136 F. App'x. 383 (2nd Cir. 2005) citations omitted; 470 F.3d. 471, 474 (2nd Cir. 2006) (observing that pro se litigants must be treated with "special solicitude"). The First Step Act (P.L. 115-391), Sec. 603, amended §3582(c)(1)(A) to permit Defendants to move a Sentencing Court for Modification of Sentence. Federal Courts have jurisdiction pursuant to Title 28 U.S.C. §1331.

To earn a Compassionate Release sentence reduction, a Movant must make three initial showings. First, that the reasons for the reduction are "extraordinary and compelling"; second, that the Movant is not a danger to the community; and third, that granting of a sentence reduction is consistent with the sentencing factors in 18 U.S.C. §3553(a).

Movant Thomas considers the following reasons to be extraordinary and compelling: He is considered obese with a Body Mass Index (BMI) number above 30, which puts him at risk with COVID-19. Also, Movant Thomas has an asthmatic background.

Though he is not considered asthmatic, he has faced these problems as a child and fears they can somehow be a major factor to his health, particularly with COVID-19.

Secondly, Movant is not a danger to society or others. Movant Thomas has been incarcerated since the age of 18 and was not fully cognizant of the role of a father and member of the community. Movant has made considerable strides as a man and person by obtaining his Associate's Degree with North Country Community College (see Exhibit 1), and countless other programs provided by the prison system, all the while pursuing a literature career with five books in negotiations to be published. Movant Thomas has worked his way down to be housed in a low-security institution and has taken the steps to better himself, and used his time getting prepared to reenter the community and be a better father to his daughter (see Exhibit 2, as Movant wants to better explain in his own words).

Thirdly, the granting of a sentence reduction is consistent with the sentencing factors in 18 U.S.C. §3553(a). Movant was sentenced to 180 months, and has served more than 75% of his projected term. Movant's projected satisfaction release date is 10/19/2022. Movant Thomas' need to reflect the seriousness of the offense, promote respect for the law, and avoid unwarranted disparities of sentencing among similarly situated inmates (co-Defendants), has been accomplished since of most of Movant's co-Defendants, with the exception of a few, have been released from custody.

Movant Thomas asserts that a formal request was made to Warden Ortiz on November 11, 2020 (see Exhibit 3). To date, Movant has not received a response. Movant would like this request to represent full exhaustion of all required Administrative Remedies due to the time-sensitive nature of this matter. Furthermore, "undue delay, if it in fact results in possible catastrophic health consequences," can justify waiving an administrative exhaustive requirement. Here, the COVID-19 outbreak and the unsanitary conditions at FCI Fort Dix, combined with the delay that Movant Thomas would experience if Movant would have to wait any more days before pursuing a Motion for Compassionate Release, would put Movant at a significant risk of suffering catastrophic health consequences, which justifies a waiver.

Under the First Step Act, this Court has broad authority to determine whether "extraordinary and compelling" circumstances exist to modify Movant Thomas' sentence and transfer him to Home Confinement. The Compassionate Release statute serves as an important safety valve in the federal sentencing system. Once a federal sentence becomes final, a number of rules serve to keep the finality of that sentence intact. In some cases, however, circumstances arise that can significantly alter the calculus conducted at the original sentencing or cast doubt on the need for further incarceration. The unprecedented threat of COVID-19 could not have been foreseen at sentencing and poses extraordinary risks to Movant Thomas' health and life.

It bears repeating that the current pandemic does place inmates in danger. Movant Thomas would like to note that inmates who reside in the same building as himself have tested positive for COVID-19 on 12/3/2020. The entire building has been placed on exposure quarantine lockdown, pending results from testing. A Sentencing Court is in a good position to consider all of the relevant circumstances, such as the most up-to-date information about conditions at a particular facility, the CDC's information about the correlation between a particular health condition, and the vulnerability of a particular ethnic group to death or serious injury from the coronavirus.

In light of the unprecedented nature of this emergency, which results in catastrophic health consequences, Federal Courts have found that they can hear Compassionate Release applications prior to the expiration of 30 days if there is an emergency, e.g., United States v. James Arberry, No. 15-CR-594 (JPC), ECF Docket No. 84 (SDNY November 12, 2019) (hearing and granting emergency Compassionate Release application of a prisoner). Specifically, Courts across the country, and within this Circuit, have so held on the basis of the COVID-19 pandemic. "No statute directs the Court to consult the BOP's rules or guidelines ... and no statute delegates authority to the BOP to define the statutory requirements for Compassionate Release." Congress reformed Section 3582(c)(1)(A) because it wanted Compassionate Release to be a more meaningful vehicle for judicial review of sentences.

Indeed, even "de novo review" is a misnomer. When a District Court rules on a Compassionate Release Motion, it is not reviewing the BOP's decision. Instead, it is simply decided, in the first instance, whether or not a Defendant is entitled to Compassionate Release under the law. Both the statutory structure, which gives the BOP no role in developing criteria for granting Compassionate Release, and the fact that the District Court is empowered to rule on a Compassionate Release Motion even if the BOP takes no action, makes this clear. Allowing Movant Thomas to finish out his sentence at home is the only prudent response to the extraordinary and compelling circumstances created by the rampant spread of the novel coronavirus at FCI Fort Dix, especially given that Movant Thomas has already served a significant portion of his sentence.

In light of the extreme danger posed by COVID-19, Movant Thomas requests that the Court decrease Petitioner's sentence from the present to Home Confinement, which will cause Movant to be immediately transferred from his present place of confinement at FCI Fort Dix, PO Box 2000, Joint Base MDL, NJ 08640, to Home Confinement [which is still under BOP custody and control]. FCI Fort Dix is a low-security United States federal prison for male offenders in New Jersey. Fort Dix is the largest federal prison in the United States as per the number of inmates housed there. General population inmates are housed in buildings formerly used as military barracks, in unhealthy, unsanitary, and hazardous conditions that foster the spread of COVID-19  The 350 inmates in the unit where Movant is housed share (21) toilets, (10) urinals,

and (15) showers. These aforementioned areas are riddled with rust, mold, and holes in the walls that expose Movant to bacteria and germs that spread COVID-19. Right now, FCI Fort Dix is the most infected institution in the entire Bureau of Prisons; 785 inmates currently have COVID-19.

Movant's verifiable Reentry Plan would include returning to his hometown to live with his 56-year-old mother, who is currently having kidney problems and is in and out of the hospital. COVID-19 has been very hard on her. His 14-year-old daughter also resides at the residence: 16 Orchard Place, Yonkers, New York 10701. Movant would support himself by using his degree to find suitable work while also working on establishing his literature career to earn additional income.

Movant is willing to implement any additional measures deemed necessary to reassure the Court and the Bureau of Prisons of his whereabouts and compliance with his sentence.

Accordingly, Movant respectfully requests this Honorable Court to modify and/or reduce Movant's sentence so that Movant may be immediately transferred by the BOP to Home Confinement.

Movant Thomas submits that this is the appropriate and humane approach in dealing with this pandemic and the global emergency of this magnitude.

I, Dexter Thomas, hereby certify under penalty of perjury and under the laws of the United States of America, 28 U.S.C. §1746, that the foregoing Motion is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Date: _____ 1- 12 , 2021

D Thomas

Dexter Thomas, pro se
Reg. No. 65642-054
FCI Fort Dix
PO Box 2000
Joint Base MDL, NJ
08640

Motion for compassionate release, pursuant to 18 U.S.C. Section 3582, is denied. Mr.
Thomas asks for early release because he claims that certain health issues place him at a
higher risk from contracting COVID-19. These medical issues include obesity and some risk
of asthma. As for his obesity, the Government concedes that Mr. Thomas is slightly above
the threshold for being considered obese, but also notes that medical records show that Mr.
Thomas is physically active and has had times where his weight fell below the obesity
threshold, thus suggesting that his condition is neither debilitating nor permanent. And, Mr.
Thomas does not suffer from asthma and even if he did, there are a number of studies
showing that asthma does not present as risky a factor as originally believed. Beyond all
that, Mr. Thomas has received the first dose of the two-dose vaccine, placing ahead of 90%
of the country in getting innoculated against COVID-19. Thus, Mr. Thomas has not met his
burden of showing extraordinary and compelling reasons for early release. And, even if he
did meet this burden, consideration of the Section 3553(a) factors cuts against release. Mr.
Thomas was convicted of violent conduct that terrorized a community and the deterrent and
respect-for-the-law factors that led the Court to impose the sentence it did would be
undermined by early release. While Mr. Thomas asserts he has undertaken to rehabilitate
himself in prison, and while those efforts are laudable, they do not outweigh the factors that
led to the sentence the Court imposed or otherwise justify early release. The Government is
to mail this memo endorsement to Mr. Thomas and certify in a filing by 2/10/21 that this was
done.

So Ordered.

2/5/21